# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**CARTER T. HOPSON,**

    Petitioner,

    v.                                                Case No. 18-CV-1035

**DYLON RADTKE,**

    Respondent.

## DECISION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Carter T. Hopson, a prisoner in Wisconsin custody, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Hopson alleges that his conviction for manufacture or delivery of cocaine, possession with intent to deliver cocaine, and resisting or obstructing an officer is unconstitutional. For the reasons stated below, the petition for writ of habeas corpus will be denied and the case dismissed.

## BACKGROUND

Hopson was charged in Brown County Circuit Court with five counts of manufacture or delivery of cocaine, one count of possession with intent to deliver cocaine, and one count of resisting or obstructing an officer. (Judgment of Conviction in Brown County Case No. 13-CF-1829, Answer, Ex. 1, Docket # 17-1.) On the first day of jury trial, the trial court judge stated that the "first order of business" was to put on the record a letter from the State to defense counsel summarizing all of the plea offers made to Hopson. (Oct. 15, 2014 Jury Trial Transcript ("Oct. 15 Tr.") at 6, Answer, Ex. 19, Docket # 17-19.) The judge explained to Hopson that the Supreme Court has said that it is necessary for defense

counsel to provide Hopson all plea offers from the State and for Hopson to reject those offers. (*Id.*) Defense counsel stated that he had not received a letter with all of the State's plea offers, and the State remarked that it would prefer to state the offers orally on the record. (*Id.* at 7.) The State then recited all of the offers made to Hopson. (*Id.* at 7–9.)

After confirming with defense counsel that the offers recited by the State constituted all of the offers received, the judge stated as follows:

> All right. So, Mr. Hopson, you understand that - - that at the conclusion of these proceedings if the jury convicts you that then the court - - you'll be placed in a position where on each of these counts it would be I believe seven years of exposure, five years initial confinement and two years in addition because of the repeater allegation[?]

(*Id.* at 9.) Hopson responded, "Yes." (*Id.*) The judge continued: "So that you're potentially facing 49 years of confinement time[?]," to which Hopson again responded, "Yes." (*Id.*) The judge then stated:

> Okay. So you - - then you wish to confer - - confirm with me that you wish to reject those offers, and you understand that if this case goes adverse to you, that at the time of sentencing if I chose to and found that this case justified my imposing the maximum, that I could sentence you to 49 years in the Wisconsin State Prison System?"

(*Id.* at 10.) Hopson again responded, "Yes." (*Id.*) The judge asked: "And now knowing all that, do you wish to proceed today to trial?," to which Hopson responded, "Yes." (*Id.*) The judge concluded: "All right. All right. Then we got that cleared up," and moved on to discuss witnesses for trial. (*Id.*)

A jury was empaneled, counsel made their opening statements, and the jury heard testimony from eight State witnesses over the course of two days. (Docket # 17-19 and Oct. 16, 2014 Jury Trial Transcript ("Oct. 16 Tr.") at 181–458, Answer, Ex. 20, Docket # 17-20.) Prior to resting its case, the State informed the court that it was planning on amending the

2

Case 2:18-cv-01035-NJ   Filed 12/16/20   Page 2 of 10   Document 27

Information to add party to a crime to several of the counts. (Oct. 16 Tr. at 457.) The State noted that it intended to call two more witnesses before resting its case. (*Id.* at 457–58.) The court then took an eleven-minute recess. (*Id.* at 458.) Upon returning on the record, the judge stated that he had been handed a plea questionnaire and defense counsel confirmed that Hopson wished to plead guilty. (*Id.*) Hopson pled guilty to counts one through five, with counts six and seven being dismissed and read-in for sentencing. (*Id.* at 458–67.) Hopson was sentenced to a total of 24 years of imprisonment, consisting of consecutive sentences of five years of initial confinement and three years of extended supervision on each of three counts. The court ordered probation on the remaining counts. (Docket # 17-1.)

      Hopson filed a motion for post-conviction relief, arguing that he was entitled to withdraw his guilty plea because the trial court judge "impermissibly participated in plea negotiations." (*State v. Hopson*, Appeal No. 2015AP2265 (Wis. Ct. App. Apr. 4, 2017) at ¶ 2, Answer, Ex. 5, Docket # 17-5.) The court of appeals affirmed Hopson's judgment of conviction. (*Id.*) The Wisconsin Supreme Court denied Hopson's petition for review. (Answer, Ex. 8, Docket # 17-8.) Hopson timely filed a petition for writ of habeas corpus on July 6, 2018. (Docket # 1.) In its Rule 4 Order, the Court found that Hopson's petition contained both exhausted and unexhausted claims and gave Hopson the opportunity to either amend his petition to proceed solely on the exhausted ground (ground one) or stay the petition to exhaust his remedies in state court. (Docket # 7.) Hopson elected to proceed solely on ground one of his petition, challenging the voluntariness of his guilty plea based on the trial judge's alleged participation in the plea process. (Docket # 8.)

## STANDARD OF REVIEW

Hopson's petition is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Under AEDPA, a writ of habeas corpus may be granted if the state court decision on the merits of the petitioner's claim (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).

A state court's decision is "contrary to . . . clearly established Federal law as established by the United States Supreme Court" if it is "substantially different from relevant [Supreme Court] precedent." *Washington v. Smith*, 219 F.3d 620, 628 (7th Cir. 2000) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). The court of appeals for this circuit recognized the narrow application of the "contrary to" clause:

> [U]nder the "contrary to" clause of § 2254(d)(1), [a court] could grant a writ of habeas corpus . . . where the state court applied a rule that contradicts the governing law as expounded in Supreme Court cases or where the state court confronts facts materially indistinguishable from a Supreme Court case and nevertheless arrives at a different result.

*Washington*, 219 F.3d at 628. The court further explained that the "unreasonable application of" clause was broader and "allows a federal habeas court to grant habeas relief whenever the state court 'unreasonably applied [a clearly established] principle to the facts of the prisoner's case.'" *Id.* (quoting *Williams*, 529 U.S. at 413).

To be unreasonable, a state court ruling must be more than simply "erroneous" and perhaps more than "clearly erroneous." *Hennon v. Cooper*, 109 F.3d 330, 334 (7th Cir. 1997). Under the "unreasonableness" standard, a state court's decision will stand "if it is one of

4

several equally plausible outcomes." *Hall v. Washington*, 106 F.3d 742, 748–49 (7th Cir. 1997). In *Morgan v. Krenke*, the court explained that:

> Unreasonableness is judged by an objective standard, and under the "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."

232 F.3d 562, 565–66 (7th Cir. 2000) (quoting *Williams*, 529 U.S. at 411), *cert. denied*, 532 U.S. 951 (2001). Accordingly, before a court may issue a writ of habeas corpus, it must determine that the state court decision was both incorrect and unreasonable. *Washington*, 219 F.3d at 627.

## ANALYSIS

Hopson argues that the trial court judge violated his due process rights, rendering his plea involuntary because the judge impermissibly injected himself into the parties' plea negotiations. Hopson argues the trial judge violated Fed. R. Crim. P. 11(c)(1), which provides as follows: "An attorney for the government and the defendant's attorney, or the defendant when proceeding *pro se*, may discuss and reach a plea agreement. The court must not participate in these discussions." Hopson argues that a violation of Rule 11 is a "*per se* violation of the due process clause" requiring "automatic reversal without consideration of its prejudicial impact." (Petitioner's Reply Br. at 3.) The Supreme Court has stated, however, that "Rule 11(c)(1) was adopted as a prophylactic measure, not one impelled by the Due Process Clause or any other constitutional requirement." *United States v. Davila*, 569 U.S. 597, 610 (2013). Thus, Rule 11(c)(1) does not create a constitutional right. Furthermore, I cannot review whether the state court properly followed Rule 11— the state

5

court is not bound by the federal court's procedural rules. Even if the state court's decision was reviewed under Rule 11, however, Hopson would not be entitled to relief. The Supreme Court has stated that "[n]othing in Rule 11's text [ ] indicates that the ban on judicial involvement in plea discussions, if dishonored, demands automatic vacatur of the plea without regard to case-specific circumstances." *Id.* at 609.

The error Hopson truly raises, then, is not that the state court violated Rule 11, but that his guilty plea was involuntary. A defendant's plea of guilty is valid if entered knowingly, voluntarily, and intelligently. *North Carolina v. Alford*, 400 U.S. 25, 31 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242 (1969). Voluntariness of the plea is determined by "considering all of the relevant circumstances surrounding" the plea. *Brady v. United States*, 397 U.S. 742, 749 (1970). The *Brady* Court defines a "voluntary" plea as:

> A plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).

*Id.* at 755 (internal quotation and citation omitted); *see also Warren v. Richland Cty. Circuit Court*, 223 F.3d 454, 457 (7th Cir. 2000) ("Due process requires that a trial court inform the defendant of the 'direct consequences' of his plea."). While the Supreme Court has stated that a defendant must be fully aware of the direct consequences of the plea, the Supreme Court has not specifically defined "direct consequences." *Dalton v. Battaglia*, 402 F.3d 729, 733 (7th Cir. 2005). The Seventh Circuit has opined that "direct consequences" includes the maximum sentence the defendant may serve because of the plea. *Id.*

6

Under habeas review, I am tasked with determining whether the Wisconsin Court of Appeals' decision is contrary to, or an unreasonable application of, established federal law as determined by the Supreme Court or was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1), (2).

Hopson argues that the trial judge, in informing him that he faced a maximum sentence of 49 years of imprisonment if convicted, "over-emphasiz[ed] comments of the negative results of going to trial – while not emphasizing any of the positive results." (Petitioner's Reply Br. at 8, Docket # 25.) Hopson argues that he was "haunted enough to shift his belief in the judge's impartiality" and "based on the judge's foreshadowing, [Hopson] was sure that if he didn't take the plea the court would be almost bound to give him the 49-year sentence because he declined to accept responsibility." (*Id.*)

The court of appeals found that a defendant who demonstrates that he did not knowingly, intelligently, and voluntarily enter his guilty plea is entitled to plea withdrawal. (*Hopson*, Appeal No. 2015AP2265, at ¶ 22.) The court of appeals noted that under Wisconsin law, "there is an absolute prohibition of judicial involvement in the negotiations that lead up to a plea bargain." (*Id.* at ¶ 24 (quoting *State v. Williams*, 2003 WI App 116, ¶ 16, 265 Wis. 2d 229, 666 N.W.2d 58).) The court of appeals rejected Hopson's argument, however, that the trial judge's statements "foreshadowed" that he was going to give Hopson the maximum sentence. The court of appeals determined that this "narrative [was] entirely hypothetical and lack[ed] any plausible connection between the circuit court's actions and Hopson's decision to accept a plea." (*Id.* ¶ 31.) The court of appeals determined that in Hopson's case, the trial court's "mere act of creating a record that the defendant had received and personally rejected all plea offers the State made does not amount to judicial

7

participation in plea negotiations" (*Id.* at ¶ 27.) The court of appeals considered the fact that the trial court did not convene an impromptu settlement conference, did not make or solicit specific offers, and did not gave the parties any input regarding what it considered an appropriate disposition of the charges Hopson was facing. (*Id.* at ¶ 29.) The court of appeals stated that the *Williams*' holding expressly applies only to direct judicial participation in the plea bargaining process itself. (*Id.* ¶ 31.) The court of appeals concluded that the principal focus of the *Williams* rule is to protect the voluntariness of a plea and nothing the trial court did in this case could "reasonably be said to have destroyed the voluntariness of [Hopson's] plea." (*Id.*)

The Wisconsin Court of Appeals' finding that Hopson's guilty plea was knowingly, voluntarily, and intelligently made is not contrary to, nor an unreasonable application of, established federal law as determined by the Supreme Court. Nor was the decision an unreasonable determination of the facts in light of the evidence presented. Hopson acknowledges that there is nothing inherently improper about a judge putting all plea offers on the record. (Petitioner's Br. at 5, Docket # 20.) In fact, Hopson cites the Supreme Court's decision in *Missouri v. Frye*, 566 U.S. 134 (2012) where the Court recommended making formal plea offers a part of the record to ensure that a defendant has been made aware of all offers before proceeding to trial. (*Id.* quoting *Frye*, 566 U.S. at 146 ("[F]ormal offers can be made part of the record at any subsequent plea proceeding or before a trial on the merits, [ ] to ensure that a defendant has been fully advised before those further proceedings commence.")). Hopson takes issue with the trial judge alerting him to the maximum sentence he faced should he be convicted of all charges. But considering that a voluntary plea is one where the defendant is made aware of the "direct consequences of the plea," *see*

8

*Brady*, 397 U.S. at 755, and the maximum sentence he may serve because of the plea is a "direct consequence," *see Dalton*, 402 F.3d at 733, it stands to reason that a defendant should also be aware of the maximum sentence he faces should he *not* take a plea. These facts allow a defendant to make an informed decision regarding whether to take a plea or go to trial. Thus, the trial judge informing Hopson of this information certainly does not make his plea involuntary.

Further, the record does not indicate that the trial judge overemphasized the maximum sentence Hopson faced based on the charges. Rather, after confirming that Hopson wanted to go to trial, the court quickly moved on. It was not until Hopson heard the testimony of eight State witnesses over the course of two days and learned of the State's intent to amend the Information to add more charges, did Hopson decide to accept a plea. It seems highly unlikely that the trial court placing the plea offers on the record and informing Hopson of the time he faced based on his charges unduly influenced his decision to plead guilty. Thus, I find the court of appeals' decision does not run afoul of federal law as articulated by the Supreme Court. Hopson's petition for a writ of habeas corpus is denied.

## CERTIFICATE OF APPEALABILITY

According to Rule 11(a) of the Rules Governing § 2254 Cases, the court must issue or deny a certificate of appealability "when it enters a final order adverse to the applicant." A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a substantial showing of the denial of a constitutional right, the petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate

to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, and n.4).

Jurists of reason would not find it debatable that Hopson is not entitled to habeas relief. Thus, I will deny Hopson a certificate of appealability. Of course, Hopson retains the right to seek a certificate of appealability from the Court of Appeals pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the petitioner's petition for a writ of habeas corpus (Docket # 1) be and hereby is **DENIED**.

**IT IS FURTHER ORDERED** that this action be and hereby is **DISMISSED**.

**IT IS ALSO ORDERED** that a certificate of appealability shall not issue.

**FINALLY, IT IS ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 16th day of December, 2020.

BY THE COURT:

_____
NANCY JOSEPH
United States Magistrate Judge